### CHARLOP v. WALDMAN.

(Supreme Court, Appellate Term. June 25, 1909.)

1. MASTER AND SERVANT (§ 9*)—EMPLOYMENT—TIME—RENEWAL OF CONTRACT.

The renewal of a contract of employment by failure of the parties to exercise an option to terminate it before its expiration is a renewal of a provision as to the employer's right to stop advances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 11; Dec. Dig. § 9.*]

2. MASTER AND SERVANT (§ 40*) — EVIDENCE — SUFFICIENCY—BREACH OF CONTRACT.

Evidence as to damages caused by breach of a contract of employment *held* insufficient to sustain the verdict.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 40.*]

Appeal from City Court of New York, Trial Term.

Action by Morris A. Charlop against Barnet Waldman. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEABURY, JJ.

Nathan Waxman, for appellant.

Leo Bernard Levy, for respondent.

PER CURIAM. On June 24, 1907, plaintiff and defendant entered into a written agreement, whereby plaintiff was engaged by defendant as a traveling salesman, to sell the cloaks and suits manufactured by defendant, from July 15, 1907, to December 15, 1907. Plaintiff was to have a drawing account of $30 a week while in the city and from $35 to $50 a week while traveling, and he was to receive a commission of 7½ per cent. on the net amount of all orders obtained by him for defendant, shipped by defendant, and accepted and paid for by the customer. The money advanced by way of the drawing account was to be deducted, at each settlement between the parties, from the commissions earned. Defendant was to render to plaintiff each month a statement of goods delivered on orders obtained by plaintiff, and the commissions earned were to be credited to plaintiff's account. On the expiration of the contract a final settlement was to be rendered and all sums due plaintiff to be paid to him. Defendant had the right to stop the drawing account if plaintiff had overdrawn $150 on or before November 15, 1907. It was also agreed that, if either party wanted to terminate the contract at the expiration thereof, he was to notify the other in writing at least 30 days before December 15, 1907, and in the absence of such notification the contract was to remain in force for one year from December 15, 1907,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under the same terms and conditions as the original contract. The 30 days' notice was not given by either party, and the original agreement was continued on the same terms and conditions for another year from December 15, 1907.

Plaintiff's testimony is as follows: On April 4, 1908, defendant asked plaintiff to take $20, instead of $30 as that week's drawing account, and defendant promised to make up the $10 the following week, to which plaintiff consented; but the $10 were not returned the next week, and defendant again asked plaintiff to allow him to hold back another $10 until the following week, when the $20 would be returned to him. The $20 were never paid, and on April 21, 1908, defendant told plaintiff that he would not advance any more money, unless plaintiff would get a written guaranty from a reliable merchant that plaintiff would pay back the excess of money advanced, in case that such money exceeded the commissions at the end of the year, and so secure defendant for any amount that might be overdrawn. Plaintiff protested that the contract called for no such guaranty; but defendant insisted upon it, and refused to advance any more money, and told plaintiff he could look for another job. Plaintiff asked: "Is that final?" To which defendant replied: "Yes; I won't give you any more money." Plaintiff replied: "You know you have contracted." To which defendant retorted: "I don't care." Plaintiff then left, and looked for other work, and found some. Plaintiff states that he does not know how his account stood at that time—i. e., April 21st—or whether he had overdrawn against his commissions in excess of $150, or not; but he is sure that defendant did not allege at that time that plaintiff had overdrawn the $150 limit, or any other amount, as a reason for refusing any further advances. Plaintiff gives in some detail his earnings elsewhere; but the actual amount seems, nevertheless, somewhat uncertain. The amount of the verdict in his favor was $380.

Defendant appeals. The latter gives quite a different account of his dispute with plaintiff, and claims that plaintiff had overdrawn his account by over $150 on said 21st day of April, 1908. In his answer defendant counterclaims $175. He also denies that he discharged plaintiff, but says he demanded a guaranty before advancing more money, because plaintiff had overdrawn his account, and he says plaintiff promised to give a guaranty, but changed his mind, and refused, and left defendant's employment of his own will and against defendant's wishes. Defendant admits that he does not know personally whether plaintiff had overdrawn his account, as he had never examined his own books, being unable to read and write, although at another place his testimony indicates that he was positive that plaintiff had overdrawn his account to the limit of $150. The last accounting was down to January 1, 1908. The defendant offered, however, by competent proof, to show that on April 21, 1908, plaintiff had drawn $175 in excess of the commissions earned, and the court held that the testimony was incompetent, because the right to stop further advances beyond the $150 excess expired on November 15, 1907. The whole contract, however, was renewed for one year, and with it the

provision giving defendant this right to stop further advances. This ruling, therefore, was error, and the court conducted the trial on an erroneous theory.

Moreover, it may be observed that defendant's evidence is supported by his bookkeeper, who heard all that passed between plaintiff and defendant; whereas plaintiff's version is only supported by his own testimony. Furthermore, there is considerable doubt, under the evidence of plaintiff himself, as to the amount of damage being greater than $90; whereas the jury allowed $380. We are of opinion that a new trial should be allowed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.